# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania, : \
Pennsylvania Game Commission, : \
            Petitioner : \
                       : \
        v. : No. 610 C.D. 2018 \
                       : Submitted: May 8, 2019 \
State Civil Service Commission : \
(Baysore), : \
            Respondent :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge \
               HONORABLE RENÉE COHN JUBELIRER, Judge \
               HONORABLE P. KEVIN BROBSON, Judge \
               HONORABLE PATRICIA A. McCULLOUGH, Judge \
               HONORABLE ANNE E. COVEY, Judge \
               HONORABLE MICHAEL H. WOJCIK, Judge \
               HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION \
BY PRESIDENT JUDGE LEAVITT             FILED: October 18, 2019

       The Pennsylvania Game Commission petitions for this Court's review of an adjudication of the State Civil Service Commission ordering the reinstatement of Aaron D. Baysore to his position as Wildlife Maintenance Propagator. The Game Commission furloughed Baysore when it closed the pheasant game farm where he worked as a propagator. The Game Commission contends that the Civil Service Commission erred in holding that the Game Commission's evidence did not make a *prima facie* case that Baysore's furlough was necessitated by lack of funds and in refusing even to address the Game Commission's evidence that his furlough was also necessitated by a lack of work.

       On December 12, 2016, the Game Commission notified Baysore that he would be furloughed from his position as Wildlife Maintenance Propagator

effective January 27, 2017, due to a lack of funds. Pursuant to Section 951(a) of the former Civil Service Act,[1] Baysore appealed to the Civil Service Commission, which held a hearing on May 1, 2017.

The Game Commission called Robert Boyd, the Wildlife Services Division Chief for the Commission's Bureau of Wildlife Management (Bureau), to testify about why the Bureau closed the North Central Game Farm and furloughed Baysore and five other pheasant propagators who worked there. The Bureau, *inter alia*, operates a pheasant propagation program that hatches pheasant chicks and raises them at game farms located in different parts of the state. As Division Chief, Boyd is responsible for the pheasant propagation program's finances and budget. Notes of Testimony, 5/1/2017, at 15 (N.T. __); Reproduced Record at 64a (R.R. __).

Boyd identified two Game Commission memoranda that were authored by the agency's Executive Director, Robert Hough. Boyd was the recipient of one memorandum and copied on the other. In the first memorandum, Appointing Authority Exhibit 1, Hough wrote to staff on April 7, 2015, that the Game Commission had been instructed by the Governor's Office to reduce "this year's budget by an additional $5.2 million; this is on top of the $14 million we were already required to cut from our budget this winter." Appointing Authority Exhibit 1 (AA-1); R.R. 19a. The memorandum cited a decline in the Game Commission's revenue from natural gas leases of state game land and projected a $35 million deficit by 2019 unless program modifications were made. Hough's second memorandum, Appointing Authority Exhibit 2, was addressed to the Governor's Secretary of

---

[1] Act of August 5, 1941, P.L. 752, *as amended*, added by Section 27 of the Act of August 27, 1963, P.L. 1257 (provides for appeals and hearings), *formerly* 71 P.S. §741.951(a). The Civil Service Act was repealed by the Act of June 28, 2018, P.L. 460, effective March 28, 2019. The subject matter of Section 951 of the former Civil Service Act is now found at 71 Pa. C.S. §§2202 and 3003, as enacted by the Act of June 28, 2018, P.L. 460.

Administration and notified the Secretary that the Game Commission intended to furlough 13 pheasant propagators, effective January 27, 2017.[2] Boyd was one of four senior Game Commission staff copied on this communication to the Secretary of Administration.

Boyd testified that the Game Commission was instructed to reduce expenses because its funding had been reduced by 10 percent for fiscal year 2015-2016 and 25 percent for the following year. Boyd testified that his Bureau implemented these instructions by not filling vacant propagator positions and deferring certain capital improvements. Most significant was the Bureau's decision to end the pheasant hatchery operations and move to the process of purchasing day-old chicks from a private vendor. Boyd explained that in 2015 the Game Commission spent $4.7 million on pheasant propagation; in 2017, this was reduced to $3 million. Boyd explained that personnel constitutes the largest single expense item in the Bureau's budget for the pheasant propagation program.

Boyd explained how the decision to furlough Baysore was made. He stated that because "we didn't get the license fee increase" from the legislature, it became necessary to close the game farms. N.T. 21; R.R. 70a. Initially, all four game farms were slated for closure. However, Boyd explained that the agency decided to "reduc[e] to two farms and cut[] costs in the chain somewhere perhaps

---

[2] Hough's memorandum of November 15, 2016, states, in relevant part, as follows:

> It has been determined that it will be necessary to furlough 13 Wildlife Maintenance Propagators from the Western and [North Central] Game Farms. These positions are covered by a collective bargaining unit [] and these are Civil Service covered positions. The anticipated date of the furlough is January 27, 2017. Each game farm is its own seniority unit and all propagators in each unit will be furloughed. The Western Game Farm is furlough unit 008 with 7 propagators and the North Central Game Farm is furlough unit 010 with 6 propagators.

Appointing Authority Exhibit 2 (AA-2); R.R. 22a.

just to improve efficiency." *Id.* Accordingly, the Game Commission decided to keep two farms open, one in each part of the state. He explained how the Bureau chose the farms to be closed:

Q. How did you pick which farms would be closed?

A. Well, it was a very difficult decision, to be honest with you. But we decided to divide the state into an eastern half and a western half. And the first criteria was to choose a farm that was somewhat centrally located in each of those two areas.

In our two --- in our western half of the state, the Southwest Game Farm was the clear winner of that situation. But the Eastern half with the Loyalsock and [North Central] both are close together so that wasn't working.

But what really distinguished the two farms is because the Loyalsock Game Farm had a breeding flock and [they had] a lot of open field space for improvement of capacity for birds to be released for hunters. Whereas, [North Central] Game Farm did not.

Q. And is it necessary to have additional Wildlife Maintenance Propagators in order to raise the chicks at the remaining farms?

A. No, because there are no longer eggs at this time.

Q. Isn't there any other work that the Game Farm Wildlife Maintenance Propagators are needed to perform?

A. No.

N.T. 22-23; R.R. 71a-72a.

On cross-examination, Baysore, who was *pro se*, asked Boyd if propagators from the Loyalsock Game Farm were doing work at the North Central Game Farm. Boyd responded that the staff was performing maintenance work as needed. Baysore then asked, "[i]f personnel costs are what is such a problem how

4

can [the agency] furlough 13 people and then start a new [Wildlife Conservation Officer] class to hire twice that many people?" N.T. 25; R.R. 74a. Boyd replied, "I do not get that level to be involved in those decisions or how those decisions are being made. But I know [the agency] focused on the Propagation Program." *Id.*

Baysore was sworn in as a witness. He did not offer any documentary evidence. He testified, "I don't know if there's work. I just don't understand how they're claiming lack of work if they're having other people go there to do work." N.T. 28; R.R. 77a.

The Game Commission moved to admit both Appointing Authority Exhibits 1 and 2, and Baysore did not object. The Commissioner stated that "Appointing Authority Exhibit 1 and Appointing Authority Exhibit 2 will be admitted to the record without objection." N.T. 26; R.R. 75a.

The Civil Service Commission sustained Baysore's appeal. It found that the two memoranda authored by Executive Director Hough were hearsay and not entitled to probative value. It further found that Boyd's testimony was not sufficiently specific and did not corroborate the documents. The Civil Service Commission held:

> The appointing authority has failed to present evidence establishing a lack of funds sufficient to justify furlough under Section 802 of the Civil Service Act, as amended.

Civil Service Commission Adjudication at 16. Based on this conclusion, it ordered the Game Commission to expunge the furlough from Baysore's record, return Baysore to regular employment as a Wildlife Maintenance Propagator within 30 days and reimburse Baysore for all wages and emoluments due since January 27, 2017, less wages and benefits received.

5

On May 1, 2018, the Game Commission petitioned for this Court's review,[3] and it makes three arguments on appeal. First, it argues that the Civil Service Commission erred in holding that the Game Commission did not present a *prima facie* case that lack of funds caused Baysore's furlough. Second, it argues that the Civil Service Commission erred in refusing to address the Game Commission's evidence that lack of work caused Baysore's furlough. Third, it argues that in reaching its conclusion, the Civil Service Commission improperly considered the Game Commission's decision to hire additional law enforcement personnel.[4]

The issues raised by the Game Commission are identical to those raised in *Pennsylvania Game Commission v. State Civil Service Commission (Wheeland)*, __ A.3d __ (Pa. Cmwlth., No. 608 C.D. 2018, filed October 18, 2019). For the reasons set forth in *Wheeland*, we vacate and remand for further proceedings.

 

_____
MARY HANNAH LEAVITT, President Judge

---

[3] In reviewing an adjudication of the Civil Service Commission, this Court determines whether necessary findings of fact are supported by substantial evidence, whether an error of law has been committed or whether constitutional rights have been violated. *Pennsylvania Game Commission v. State Civil Service Commission (Toth)*, 747 A.2d 887, 891 (Pa. 2000).

[4] Baysore has not filed a brief and, thus, has not participated in this appeal.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania,          :
Pennsylvania Game Commission,          :
               Petitioner          :
                                              :
             v.          :    No. 610 C.D. 2018
                                              :
State Civil Service Commission          :
(Baysore),          :
               Respondent          :

## **O R D E R**

AND NOW, this 18th day of October, 2019, the order of the State Civil Service Commission in the above-captioned matter dated April 5, 2018, is VACATED for the reasons set forth in the Court's opinion in *Pennsylvania Game Commission v. State Civil Service Commission (Wheeland)*, __ A.3d __ (Pa. Cmwlth., No. 608 C.D. 2018, filed October 18, 2019). The matter is REMANDED for further proceedings in accordance with the analysis in *Wheeland*.

        Jurisdiction relinquished.

 

_____
MARY HANNAH LEAVITT, President Judge

Commonwealth of Pennsylvania, :
Pennsylvania Game Commission, :
                Petitioner :
                  :
            v. :
                  :
State Civil Service Commission :
(Baysore), : No. 610 C.D. 2018
              Respondent : Submitted: May 8, 2019

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE COVEY                        FILED:  October 18, 2019

        I respectfully dissent from the Majority's conclusion that the State Civil Service Commission (SCSC) erred by holding that the Commonwealth of Pennsylvania, Pennsylvania Game Commission's (Game Commission) evidence did not make a *prima facie* case that Aaron D. Baysore's (Baysore) furlough was necessitated by lack of funds and in refusing to address the Game Commission's evidence that his furlough was also necessitated by a lack of work. Because the Game Commission's Executive Director Robert M. Hough's (Hough) April 7, 2015 Strategic Plan/Budget memorandum, and the November 15, 2016 Furlough Notification letter from the Game Commission's Administration Office's Secretary Sharon Minnich to Hough were uncorroborated hearsay evidence and the Game Commission's Wildlife Management Bureau's Wildlife Services Division Chief

Robert Boyd did not testify with respect to the budgets, the Game Commission did not meet its burden of proving that Baysore's furlough was necessitated by a lack of funds and/or a lack of work.  Accordingly, for the reasons set forth in my dissenting opinion in *Pennsylvania Game Commission v. State Civil Service Commission (Wheeland)*, __ A.3d __ (Pa. Cmwlth., No. 608 C.D. 2018, filed October 18, 2019), I would affirm the SCSC's order reinstating Baysore to his position as Wildlife Maintenance Propagator.

_____
ANNE E. COVEY, Judge

Judge McCullough and Judge Wojcik join in this dissenting opinion.